UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 28, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Timothy G. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
       Civil No. 24-0050-CDA

Dear Counsel:

On January 5, 2024, Plaintiff Timothy G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' briefs (ECFs 9, 11, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 21, 2017, alleging a disability onset of September 11, 2016. Tr. 189-202, 215-17. Plaintiff's claims were denied initially and on reconsideration. Tr. 99, 117, 123-26, 131-32. On January 30, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 47-86. Following the hearing, on February 14, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 25-45. The Appeals Council denied Plaintiff's request for review. Tr. 1-7. On February 4, 2021, this Court remanded the case to the Commissioner for further consideration. Tr. 736. On August 15, 2023, a second hearing was held before a different ALJ. Tr. 645-74. On September 7, 2023, the ALJ issued their decision and found that Plaintiff was not disabled. Tr. 620-44. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R.

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on January 5, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

§ 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff engaged in substantial gainful activity from October 2020 through June 2020. Tr. 626. However, the ALJ determined that there was a continuous 12-month period in which Plaintiff did not engage in substantial gainful activity. Tr. 626. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "history of right femur fracture, right patellar fracture, and right distal tibia fracture, history of lumbar compression fracture, degenerative disc disease, lumbar disc bulges, left forearm fractures with history of an open reduction, internal fixation surgery, history of skull fracture with traumatic brain injury, neurocognitive disorder, anxiety disorder with depression, post-traumatic stress disorder (PTSD), and chronic intermittent post-traumatic headaches." Tr. 626-27. The ALJ determined that Plaintiff did not suffer from any non-severe impairments. Tr. 627. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 627. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following: he is able to lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently. He is also able to stand and walk for six (6) hours in an eight- (8- ) hour workday and sit for six (6) hours in an eight- (8- ) hour workday. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Additionally, he is unable to climb ladders, ropes, or scaffolds. He requires the ability to alternate between sitting and standing about every thirty (30) minutes. He is limited to performing simple 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors. The claimant is unable to maintain contacts with the general public. The claimant is also unable to perform tasks that

> require a fast pace or production quotas, such as would customarily be found on an assembly line.

Tr. 629. The ALJ determined that Plaintiff was unable to perform past relevant work as a cook helper (DOT[3] #317.687-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 635. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 637.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to provide a proper narrative discussion to support the conclusion that Plaintiff's severe mental and physical impairments necessitated a limitation that Plaintiff is "unable to perform tasks that require a fast pace or production quotas, such as would customarily be found on an assembly line." ECF 9, at 7-13; ECF 14, at 1-2. Defendant counters that the ALJ properly accounted for Plaintiff's moderate concentration, persistence, and pace ("CPP") limitations when formulating the RFC and supported the RFC determination with substantial evidence. ECF 11, at 7-18.

The Court finds that the ALJ properly accounted for Plaintiff's moderate CPP limitations and amply supported the RFC determination with substantial evidence. A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Timothy G. v. Dudek*
Civil No. 24-0050-CDA
March 28, 2025
Page 4

assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Plaintiff argues that the ALJ "failed to provide a proper narrative discussion of several aspects of the RFC determination[,]" rendering the ALJ's RFC determination unsupported by substantial evidence. ECF 9, at 7-9. Specifically, Plaintiff contends that the ALJ failed to connect the RFC's production pace provision to Plaintiff's moderate CPP limitations such that "it is unclear whether this RFC limitation was even intended to accommodate Plaintiff's mental impairments." *Id.* at 11. The Court finds these arguments unavailing.

At step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 628. The ALJ's RFC states Plaintiff "is limited to performing simple 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and

*Timothy G. v. Dudek*
Civil No. 24-0050-CDA
March 28, 2025
Page 5

supervisors[,]" and "is unable to maintain contacts with the general public." Tr. 629. The ALJ's RFC further states Plaintiff "is also unable to perform tasks that require a fast pace or production quotas, such as would customarily be found on an assembly line." Tr. 629. The ALJ's reliance on the opinions of the state agency psychologists in crafting the RFC provides support for the CPP limitations incorporated therein and enables the Court to perform meaningful review.

Here, the state agency psychologists determined that Plaintiff had a moderate CPP limitation. Tr. 92, 108. They opined that Plaintiff had moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 95-96, 113. They also opined that Plaintiff is able to sustain his concentration, persistence, and pace for "simple work functions, follow simple instructions[,] and maintain a regular schedule." Tr. 96, 113, 633. The ALJ gave these opinions "significant weight, as the evidence shows that [Plaintiff's] mental impairments were managed with medication and therapy." Tr. 633. The ALJ noted that Plaintiff's examinations showed Plaintiff "was oriented, and he had intact thought processes." Tr. 633. The ALJ further found that Plaintiff's "symptoms were managed with treatment and he consistently exhibited mostly normal cognitive and social skills during a series of thorough evaluations." Tr. 633.

The ALJ subsequently crafted an RFC incorporating a limitation to simple 1-4 step, routine, repetitive tasks in a low stress work environment and a restriction from performing tasks that require a fast pace or production quotas—the same provisions set forth in the state agency psychologists' opinions. Tr. 629-34. The ALJ explicitly considered the directives of *Mascio* and found that the objective evidence shows Plaintiff "could play video games, complete self-care, and read books[,]" and that Plaintiff "consistently exhibited intact memory skills and normal thought processes." Tr. 633. Accordingly, the ALJ accommodated for Plaintiff's moderate functional limitations in the RFC assessment "by limiting [Plaintiff] to performing simple routine repetitive tasks with limits to his ability to socialize." Tr. 633. Given the ALJ's adoption of the state agency psychologists' opinions related to Plaintiff' CPP limitations, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from performing tasks that require a fast pace or production quotas. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). As such, the Court determines that the state agency psychologists' opinions "provided substantial support" for the RFC assessed in this case and that the ALJ's adoption of these opinions permits meaningful review. Tr. 629, 633-34; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

This Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace

*Timothy G. v. Dudek*
Civil No. 24-0050-CDA
March 28, 2025
Page 6

(i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

A careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provisions accounting for Plaintiff's moderate CPP limitations. In examining Plaintiff's moderate CPP limitations, the ALJ found that "the progress notes submitted by [Plaintiff's] treating physicians do not describe significant cognitive abnormalities," and that "the results of a mental status examination did not reveal significant cognitive deficits." Tr. 628. The ALJ observed that Plaintiff "is able to shop for himself and negotiate travel in public areas[,]" and "manages his own finances, and he can complete a wide range of daily activities." Tr. 628. The ALJ found that the objective medical evidence "indicates [Plaintiff] has moderate limitations in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." Tr. 628.

The ALJ acknowledged that Plaintiff "reported that he experienced severe mental deficits, emotional instability, angry outbursts, and impulsive behaviors[,]" and that "he had panic attacks and did not manage stress well." Tr. 630-31. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent" with the objective evidence. Tr. 630. For example, the ALJ acknowledged that Plaintiff reported emotional distress, and various physical injuries, following a motor vehicle accident in September 2016. Tr. 631. However, post-surgical treatment notes showed Plaintiff "exhibited intact cognitive and social skills . . . suggesting his condition was not as limiting as described." Tr. 631. During a psychological assessment in January 2017, Plaintiff "denied cognitive delays[,] . . . had intact thought processes and memory during [an] examination[,]" and "added that he was fully independent in completing activities of daily living, further reducing the consistency of the description of his symptoms and limitations." Tr. 631.

Additionally, in April 2017, Dr. Brooks conducted a psychological assessment of the Plaintiff and found that Plaintiff was able "to understand and follow simple instructions independently." Tr. 631-32. The ALJ gave significant weight to Dr. Brooks' findings, noting that the objective medical evidence "consistently describes intact cognitive abilities and social skills." Tr. 632. The ALJ observed that Plaintiff "received no treatment while in prison, and his records show relatively intact memory and thought processes." Tr. 632. The ALJ further noted that, during psychiatric treatment in October and November of 2018, Plaintiff "exhibited normal cognitive

abilities, intact memory and thought processes, linear and goal directed thoughts, [and] fair judgement and insight skills[.]" Tr. 632. The ALJ found the RFC assessment supported by post-injury treatment notes that were "without a consistent description of significant cognitive or social deficits[.]" Tr. 632-33. The ALJ concluded that the RFC assessment "is supported by the objective medical evidence," noting that "[t]reatment notes in the record do not sustain [Plaintiff's] allegations of a disabling condition." Tr. 634. The ALJ observed that Plaintiff experiences "some limitations but only to the extent described in the [RFC]." Tr. 634.

Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally* ECF 9. Plaintiff also fails to explain how a more detailed explanation of the mental RFC might change the outcome of this case. Rather, Plaintiff argues that the ALJ's lack of explanation precludes judicial review. ECF 9, at 9-13. But, as noted above, the ALJ's adoption of the state agency psychologists' opinions and other review of the objective medical evidence of the record support their determinations regarding Plaintiff's CPP limitations. *See Sizemore*, 878 F.3d at 80-81. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge